Carolina REYES, Jesus Pedroza, Rene Paredes, Tony Lopez, and Maria Santillanes, et al.

v.

**GREATER TEXAS FINISHING CORP. and Sun Apparel, Inc.**

No. EP–97–CA–465–DB.

United States District Court, W.D. Texas, El Paso Division.

Aug. 25, 1998.

Viviana Patiño, El Paso, TX, for plaintiffs.

Michael D. McQueen, Shawn Oller, Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant Greater Texas Finishing Corp.'s Second Motion for Summary Judgment, filed on July 10, 1998, in the above-captioned cause. Plaintiffs filed their Response to Defendant's Second Motion for Summary Judgment on July 21. Thereafter, on July 31, Defendant filed its Reply to Plaintiffs' Response. After due consideration of the arguments and evidence, the Court is of the opinion that Defendant's Motion should be granted as set forth below.

### Procedural History

The instant class action lawsuit was filed pursuant to the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. §§ 2101–2109, by over 200 individuals who were terminated from employment with Greater Texas Finishing Corporation ("Greater Texas") on or about August 29, 1997. On June 29, 1998, the Court issued its Memorandum Opinion and Order on Defendants' Motion for Summary Judgment. By its Opinion and Order, the Court ruled in favor of Defendants on a number substantive issues including the following: (1) Sun Apparel was not Plaintiffs' employer under WARN; (2) Greater Texas did not suffer a plant closing during the time in question; (3) Greater Texas' facilities at 1430 and 1450 Vanderbilt Drive in El Paso, Texas, constitute a single site of employment for purposes of WARN calculations; and (4) Greater Texas was not liable under Reyes' claim for breach of contract. In addition, the Court found that summary dismissal of Plaintiffs' claim under WARN with regard to a "mass layoff" was inappropriate because Greater

Texas failed to provide the Court with summary judgment evidence for the correct "notice date" in accordance with the statute and regulations. However, the Court ultimately provided Greater Texas the opportunity to re-argue its Motion with appropriate summary judgment evidence. Accordingly, Greater Texas timely filed the Motion now before the Court.

## Discussion

Defendant's Second Motion for Summary Judgment presents only one issue for review: did a mass layoff occur at Greater Texas at any time from July 29 through September 28, 1997, which would trigger the notice requirements under the WARN Act? Based upon the summary judgment evidence now before the Court, it is clear the answer to that question is "no."

■ As discussed in the Court's prior Opinion and Order, under the WARN Act, an employer must provide notice to affected employees at least 60 calendar days prior to any planned plant closing or mass layoff.[1] *See* 29 U.S.C. § 2102(a). A "mass layoff" is a reduction in force which is not the result of a plant closing, and results in an employment loss at a single site of employment during any 30–day period which involves one-third of the employees at that site and at least 50 employees. *See* 29 U.S.C. § 2101(a)(3). An "employment loss" includes: (1) an employment termination other than a discharge for cause, voluntary departure, or retirement; (2) a layoff exceeding six months; or (3) a reduction in hours of work of individual employees of more than 50 percent during each month of any six-month period. *See* 29 U.S.C. § 2101(a)(6); 20 C.F.R. § 639.3(f)(1) (1998).

In this case, the bulk of the layoffs and terminations, 215 employees, occurred on August 29, 1997. The Court previously found that, in accordance with Department of Labor regulations, in order for Greater Texas to decide whether notice should issue it should have looked ahead 30 days and behind

30 days to determine whether employment actions both taken and planned, would in the aggregate for any 30 day period, reach the minimum numbers for a mass layoff. *See* 20 C.F.R. § 639.5(a)(1). The point in time at which the number of employees is to be measured is the date the first notice is required to be given, namely, 60 calendar days prior to any planned mass layoff. *See* 20 C.F.R. § 639.5(a)(2). However, when all employees are not terminated on the same date, the date of the first individual termination within the statutory 30 day period triggers the 60 day notice requirement. *See* 20 C.F.R. § 639.5(a)(1).

■ The Court held in its earlier Opinion that the correct notice date should have been 60 days prior to the first layoff occurring within the 30 days preceding the August 29 layoffs, or May 31, 1997.[2] However, by the instant Motion, Greater Texas urges that the requisite notice date under the Act should have been June 12, 1997. Greater Texas reasons that the statutory and regulatory provisions of the WARN Act contemplate examining *any* 30–day period in and around the proposed layoff date. *See* 29 U.S.C. § 2101(a)(3); 20 C.F.R. § 639.5(a)(1)(i). According to Greater Texas, this "rolling" 30–day period allows for the consideration of the greatest number of employees who suffer an employment loss, and thus best coincides with the goals of the WARN Act. Applying this approach in the instant case produces a notice date of June 12, 1997, since the greatest number of employment losses occurred during the 30–day period between August 11 and September 9, 1997.

While the Court assents to this argument, the Court also proposes that in applying the "rolling" 30–day period, the earliest notice date under such a time frame, May 31, would just as well serve the purposes of the Act, that is, providing affected employees notice at the earliest possible date. *See* 20 C.F.R. § 639.1(a) (purpose of the Act is to allow workers transition time to adjust to the pro-

---

1. For purposes of this Opinion and to the extent necessary, the Court hereby incorporates the factual basis, evidentiary rulings, and substantive findings contained in its Opinion and Order dated June 29, 1998.

2. The Court found that the first employee entitled to possible notice under WARN was terminated on July 30, 1997.

spective loss of employment and to seek and obtain alternative jobs, or retraining). Nevertheless, whether the May 31 or June 12 notice dates are used to perform the WARN calculations, the final results are the same: fewer than 33 percent of Greater Texas' employees suffered an employment loss from July through September of 1997.

■ Greater Texas employed a total of 796 employees at its facilities on May 31, 1997.[3] Of these employees, however, 19 were part-time employees and therefore not included in the WARN calculations. *See* 29 U.S.C. § 2101(a)(3)(B); 20 C.F.R. §§ 639.3(c)(1), 639.6(b). Thus, for purposes of determining coverage under WARN, the number of employees employed by Greater Texas on May 31, 1997, was 777. Next, as previously explained, the requisite time period for calculating employment losses in the instant case is 30 days before and 30 days after August 29, 1997.[4] Between July 29 and September 28, 1997, a total of 232 employees were laid off by Greater Texas, of which 41 employees were part-time employees and not included in determining whether a mass layoff occurred. *See* 29 U.S.C. § 2101(a)(3)(B); 20 C.F.R. §§ 639.3(c)(1), 639.6(b). In addition, of the remaining 191 employees who were laid off, 34 were recalled to work by Greater Texas within six months and, as such, did not suffer an "employment loss" under WARN. *See* 29 U.S.C. § 2101(a)(6). Therefore, between July 29 and September 28, 1997, the total number of employees who suffered an "employment loss" in the form of a layoff was 157 (232–41–34 = 157).

Furthermore, during this same time period, 36 additional employees were terminated from employment with Greater Texas. However, 17 of these employees were part-time employees and therefore, are not included in the WARN calculation. *See* 29 U.S.C. § 2101(a)(3)(B); 20 C.F.R. §§ 639.3(c)(1),

639.6(b). In addition, 11 employees voluntarily resigned and, consequently, did not suffer an "employment loss" as required under the Act. *See* 29 U.S.C. § 2101(a)(6); 20 C.F.R. § 639.3(f)(1). Thus, a total of eight (36–17–11 = 8) Greater Texas employees were terminated and, therefore, suffered an "employment loss" under WARN.

Lastly, there were no Greater Texas employees whose hours were reduced more than 50 percent during each month of the six-month period surrounding the August 29, 1997, layoff. *See* 29 U.S.C. § 2101(a)(6).

Therefore, based upon the figures noted above, it appears that the number of Greater Texas employees who suffered an employment loss due to layoffs or terminations during July 29 through September 28, 1997, totaled 165. This number equals 21.24 percent of Greater Texas' entire countable workforce on May 31, 1997 (165 / 177 = 21.235%); more than ten percent shy of the amount necessary to invoke WARN notice requirements.

Likewise, nearly the same result is achieved when employing the notice date of June 12, 1997, as proffered by Greater Texas. On that date, Greater Texas employed a total of 789 employees, of which 19 were considered part-time. Thus, for purposes of performing the WARN calculation, Greater Texas employed a total of 770 full-time employees on June 12, 1997. The number of countable employees for the period remains the same for purposes of the calculation— 165. As such, the percentage of Greater Texas' workforce on June 12, 1997, that suffered an employment loss from July 29 through September 28, 1997, is 21.43 percent (165 / 770 = 21.428%)—also more than ten percent shy of the requisite 33 percent under WARN.

In summary, Plaintiffs have failed to show that the requisite number of countable Great-

---

3. By way of their Response, Plaintiffs challenge Greater Texas' summary judgment evidence by arguing that the relevant numbers provided in the affidavits of Doris Nelms are inconsistent, incorrect, and possibly the product of perjury. To the contrary, the Court agrees with Defendant's explanation for the difference in the numbers, and finds the affidavits of Doris Nelms to be trustworthy and reliable.

4. For ease of calculation, Greater Texas has submitted, and the Court accepts, summary judgment evidence on total employment terminations and layoffs for the period between July 29 and September 28, 1997, collectively.

er Texas employees suffered "employment losses" sufficient to invoke the notice requirements under WARN, for either notice date and even when considering an exaggerated 60–day period from July 29 through September 28, 1997. Defendant's Motion with respect to Plaintiffs' cause of action under WARN concerning a "mass layoff" is proper and, consequently, Plaintiffs' claim should be summarily dismissed.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Greater Texas Finishing Corp.'s Second Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED**.

### *FINAL JUDGMENT*

On this day, and previously on June 29, 1998, the Court entered Orders granting Defendants' Motions for Summary Judgment and Dismissing the above-captioned cause. The Court now enters its final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment are **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED** with prejudice. All other pending motions, if any, are **DENIED** as **MOOT**.